**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HASHMEL C. TURNER, JR.,
            *Plaintiff-Appellant,*

v.

THE CITY COUNCIL OF THE CITY OF
FREDERICKSBURG, VIRGINIA; THOMAS
J. TOMZAK, in his official capacity
as Mayor of the City of
Fredericksburg, Virginia,
            *Defendants-Appellees.*

No. 06-1944

AMERICAN CIVIL LIBERTIES UNION OF
VIRGINIA FOUNDATION,
            *Amicus Supporting Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:06-cv-00023-JRS)

Argued: March 19, 2008

Decided: July 23, 2008

Before Sandra Day O'CONNOR, Associate Justice (Retired),
Supreme Court of the United States, sitting by designation, and
MOTZ and SHEDD, Circuit Judges.

Affirmed by published opinion. Associate Justice O'Connor wrote the
opinion, in which Judge Motz and Judge Shedd joined.

## COUNSEL

**ARGUED:** R. Johan Conrod, Jr., KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellant. Robert Martin Rolfe, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees. **ON BRIEF:** J. Bradley Reaves, KAUFMAN & CANOLES, P.C., Norfolk, Virginia; James J. Knicely, KNICELY & ASSOCIATES, P.C., Williamsburg, Virginia, for Appellant. Maya M. Eckstein, Terence J. Rasmussen, Thomas K. Johnstone, IV, HUNTON & WILLIAMS, Richmond, Virginia; Elliot M. Mincberg, Judith E. Schaeffer, PEOPLE FOR THE AMERICAN WAY FOUNDATION, Washington, D.C., for Appellees. Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC., Richmond, Virginia, for Amicus Supporting Appellees.

---

## OPINION

O'CONNOR, Associate Justice (Retired):

Appellant Hashmel Turner claims that the Council for the City of Fredericksburg, Virginia, violated his First Amendment rights when it implemented a policy beginning in 2005 requiring that legislative prayers be nondenominational. Because the prayers at issue here are government speech, we hold that Fredericksburg's prayer policy does not violate Turner's Free Speech and Free Exercise rights. Likewise, the requirement that the prayers be nondenominational does not violate the Establishment Clause.

I.

The Council of the City of Fredericksburg, Virginia ("the Council") begins every meeting with a Call to Order, which consists of an opening prayer offered by one of the Council's elected members followed by the Pledge of Allegiance. Only Council members are allowed to offer the opening prayer, and the Council members rotate the Call to Order duty. Until 2005, members of the Council were allowed to offer denominational prayers.

Turner was first elected to the Council in 2002. He is an ordained minister and a part-time pastor of the First Baptist Church of Love. Turner's religious beliefs require him to close his prayers in the name of Jesus Christ. Turner's prayers on behalf of the Council reflected this practice.

In 2005, the American Civil Liberties Union threatened to file a lawsuit if the Council's practice of opening with sectarian prayers continued. The City Attorney examined the relevant case law and concluded that the safest course of action was to continue offering prayers, but to offer nondenominational prayers which did not invoke the name of Jesus Christ. The Council adopted their attorney's suggestion and promulgated a prayer policy on November 8, 2005. Turner abstained from voting in that decision.

On November 22, 2005, Turner's name came to the front of the prayer rotation. Knowing Turner's beliefs on the matter, the Mayor asked Turner if he planned to close his prayer in the name of Jesus Christ, in violation of the newly adopted policy; Turner said that he would. The Mayor refused to recognize Turner and called on another Council member to deliver the opening prayer instead.

Turner filed this suit, claiming that the Council's prayer policy was an unconstitutional establishment of religion, and that it violated his Free Exercise and Free Speech rights. The district court granted summary judgment to the Council, and this appeal followed.

## II.

As a preliminary matter, we must decide whether the legislative prayer at issue here is speech that must be attributed to the government, or whether the Call to Order prayers were given in a personal capacity.

The Fourth Circuit has adopted a four-factor test for determining when speech can be attributed to the government. In order to determine whether the speech in question is government or private speech, we consider:

> (1) the central "purpose" of the program in which the speech in question occurs; (2) the degree of "editorial control" exercised by the government or private entities over the content of the speech; (3) the identity of the "literal speaker"; and (4) whether the government or the private entity bears the "ultimate responsibility" for the content of the speech.

*Sons of Confederate Veterans, Inc. v. Comm'r of Dep't of Motor Vehicles*, 288 F.3d 610, 618 (2002), citing *Wells v. City & County of Denver*, 257 F.3d 1132, 1141 (10th Cir. 2001). Applying these factors, we conclude that the legislative prayer at issue here is governmental speech.

First, the purpose of the program suggests that the speech is governmental in nature. The prayer is an official part of every Council meeting. It is listed on the agenda, and is delivered as part of the opening, along with the Pledge of Allegiance. The person giving the prayer is called on by the Mayor. The prayers typically ask that Council members be granted wisdom and guidance as they deliberate and decide how best to govern the city. We conclude that the central purpose of the Council meeting is to conduct the business of the government, and the opening prayer is clearly serving a government purpose.

As to the second and third factors, the Council itself exercises substantial editorial control over the speech in question, as it has prohibited the giving of a sectarian prayer. While Turner is the literal speaker, he is allowed to speak only by virtue of his role as a Council member. Council members are the only ones allowed to give the Call to Order.

The only factor about which there is any question is whether the government or the Council member who delivers the prayer bears the ultimate responsibility for its content.

In the prayers Turner offered before the current prayer policy was adopted, he prayed, "As we are about the business of this locality, we ask Lord God, that you will cleanse our hearts and our minds that we make the right decisions that's best suited for this locality." JA 489.

It is true that Turner and the other Council members take some personal responsibility for their Call to Order prayers. But given the focus of the prayers on government business at the opening of the Council's meetings, we agree with the District Court that the prayers at issue are government speech.

Turner has not cited a single case in which a legislative prayer was treated as individual or private speech. Indeed, the Fourth Circuit has determined that more difficult cases than this one should be classified as government speech. For instance, in *Simpson v. Chesterfield County Board of Supervisors*, 404 F.3d 276 (4th Cir. 2005), the Board of Supervisors invited religious leaders from congregations throughout Chesterfield County to give prayers on a rotating basis. *Id.* at 279. The identity of the speaker, and the responsibility for the speech, was, in that case, less clearly attributable to the government than the speech here, because the speakers there were not government officials. *Simpson* nonetheless held that "the speech . . . was government speech." *Id.* at 288.

## III.

Turner claims that, under the Establishment Clause, the government may not dictate the content of official prayers. He points to *Lee v. Weisman*, 505 U.S. 577 (1992), which held that a school principal, who directed a rabbi to deliver a nonsectarian prayer, violated the Establishment Clause. The Court explained that "[i]t is a cornerstone principle of our Establishment Clause jurisprudence that 'it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government.'" *Id.* at 588 (quoting *Engel v. Vitale*, 370 U.S. 421, 425 (1962)). Thus, Turner says, the government cannot require that nonsectarian prayers be given.

Turner's argument misses the mark. As the *Lee* Court went on to explain, the school's direction to deliver a nonsectarian prayer was a "good-faith attempt to ensure that the sectarianism which is so often the flashpoint for religious animosity [was] removed from the graduation ceremony." *Id.* But the Establishment Clause question that was raised was not whether the school had made a good-faith attempt to accommodate other religions; instead, the question was "the legiti-

macy of its undertaking that enterprise at all when the object is to produce a prayer to be used in a formal religious exercise which students, for all practical purposes, are obliged to attend." *Id.* at 589. We do not read *Lee* as holding that a government cannot require legislative prayers to be nonsectarian. Instead, *Lee* established that government cannot compel students to participate in a religious exercise as part of a school program.

The Supreme Court of the United States has treated legislative prayer differently from prayer at school events: "[T]here can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society. To invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment.'" *Marsh v. Chambers*, 463 U.S. 783, 792 (1983). Opening prayers need not serve a proselytizing function, and often are an "acknowledgement of beliefs widely held among the people of this country." *Id.* So long as the prayer is not used to advance a particular religion or to disparage another faith or belief, courts ought not to "parse the content of a particular prayer." *Id.* at 795; *see also Wynne v. Town of Great Falls*, 376 F.3d 292, 298 (4th Cir. 2004).

We need not decide whether the Establishment Clause *compelled* the Council to adopt their legislative prayer policy, because the Establishment Clause does not absolutely dictate the form of legislative prayer. In *Marsh*, the legislature employed a single chaplain and printed the prayers he offered in prayerbooks at public expense. By contrast, the legislature in *Simpson* allowed a diverse group of church leaders from around the community to give prayers at open meetings. *Simpson*, 404 F.3d at 279. Both varieties of legislative prayer were found constitutional. The prayers in both cases shared a common characteristic: they recognized the rich religious heritage of our country in a fashion that was designed to include members of the community, rather than to proselytize.

The Council's decision to provide only nonsectarian legislative prayers places it squarely within the range of conduct permitted by *Marsh* and *Simpson*. The restriction that prayers be nonsectarian in nature is designed to make the prayers accessible to people who come from a variety of backgrounds, not to exclude or disparage a particu-

lar faith. The Council's decision to open its legislative meetings with nondenominational prayers does not violate the Establishment Clause.

IV.

Appellant also argues that the prayer policy violates his Free Exercise and First Amendment rights. As *Simpson* explained:

> [T]his issue turns on the characterization of the invocation as government speech. . . . The invocation is not intended for the exchange of views or other public discourse. Nor is it intended for the exercise of one's religion. . . . The context, and to a degree, the content of the invocation segment is governed by established guidelines by which the [government] may regulate the content of what is not expressed.

*Simpson*, 404 F.3d at 288 (internal citations omitted) (second omission in original); *see also Rosenberger v. Rectors and Visitors of University of Virginia*, 515 U.S. 819, 833 (1995) ("[W]e have permitted the government to regulate the content of what is or is not expressed when it is the speaker.").

Turner was not forced to offer a prayer that violated his deeply-held religious beliefs. Instead, he was given the chance to pray on behalf of the government. Turner was unwilling to do so in the manner that the government had proscribed, but remains free to pray on his own behalf, in nongovernmental endeavors, in the manner dictated by his conscience.

His First Amendment and Free Exercise rights have not been violated.

For these reasons, the decision of the district court is

*AFFIRMED*.